UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILAD KARIMAGHAEE,<br><br>            Petitioner,<br><br>   v.<br><br>MARK BOWEN, et al.,<br><br>            Respondents. | Case No. 5:25-cv-03573-SRM-JDE<br><br>**ORDER GRANTING, IN PART, EMERGENCY PETITION FOR A WRIT OF HABEAS CORPUS [2]** |

## I. INTRODUCTION

Petitioner Milad Karimaghaee is a 25-year-old Iranian citizen. He is Christian. Petitioner fled Iran to the United States with his mother and sister after Iranian authorities arrested members of his home church. Upon his arrival, Petitioner was detained and placed in removal proceedings. On May 6, 2025, an immigration judge ordered Petitioner removed to Iran but withheld his removal under the Convention Against Torture because he fears persecution and torture for his Christian faith if he is returned to Iran. It has been over eight months, and Respondents continue to detain him in immigration custody.

Now before the Court is Petitioner's Emergency Petition for a Writ of Habeas Corpus ("Petition") and an Emergency Motion to Award the Writ or Issue an Order to Show Cause ("Emergency Motion"). *See* Dkts. 2, 3. Respondents Mark Bowen, Warden

1  of the Adelanto Immigration and Customs Enforcement Processing Center; Ernesto
2  Santacruz, Jr., Director of the Los Angeles Field Office for Immigration and Customs
3  Enforcement; Todd Lyons, Acting Director of ICE; Kristi Noem, Secretary of the United
4  States Department of Homeland Security; and Pamela Bondi, Attorney General of the
5  United States Department of Justice did not file a response to the Petition or Emergency
6  Motion.
7      The Court has reviewed the verified allegations in the Petition, the attached
8  exhibits, Petitioner's arguments, and relevant legal authority. For the reasons stated
9  below, the Petition is **GRANTED, IN PART**.
10 **II.    BACKGROUND**
11     **A.    Petitioner's Removal Proceedings and Continued Detention**
12     The following facts are derived from verified allegations in the Petition, the
13 attached exhibits, and Petitioner's declaration. *See* Dkt. 2. Petitioner Milad Karimaghaee
14 ("Petitioner") was born in Iran. Dkt. 2-2 at 2. Petitioner is not a citizen or national of
15 another country, and he has not lived in any country other than Iran and the United States.
16 *Id.* He is Christian. *Id.* In December 2024, Petitioner fled Iran to the United States after
17 fearing persecution and torture after Iranian authorities arrested members of his
18 underground home church. *Id.* Upon entry to the United States in early January 2025,
19 Petitioner was detained and placed into removal proceedings. *Id.* During his removal
20 proceedings, Petitioner applied for asylum, withholding of removal under 8 U.S.C.
21 § 1231(b)(3), and withholding of removal under the Convention Against Torture
22 ("CAT") because he fears religious persecution and torture if returned to Iran. *See* Dkts.
23 2-1 at 2; 2-2 at 2. On May 6, 2025, an immigration judge ordered Petitioner removed to
24 Iran but withheld his removal under the CAT. Dkt. 2-1 at 2, 4. Both parties waived
25 appeal, and the May 6 removal order became administratively final. *See id.* at 5.
26     Petitioner was not, however, released from custody after the initial 90-day removal
27 period elapsed. *See* Dkt. 2-2 at 3. In August 2025, Petitioner requested a personal
28 interview to review his custody status, which was then scheduled for October 2025. Dkt.

2-2 at 2. In early September 2025, Petitioner asked a deportation officer when he could be released. *Id.* A deportation officer told him "they were working on this and may send him to a third country." *Id.* About a month later, in October 2025, Petitioner received his custody review interview. *Id.* at 3. According to Petitioner, they discussed how his aunt is his sponsor, and the interviewing officer asked for his aunt's address. *Id.* The officer did not, however, identify any country that is willing to accept Petitioner. *Id.* As of today, Petitioner remains in immigration custody at Desert View Annex in Adelanto, California. *See id.* at 2–3.

      **B.**      **Secretary Noem's Memorandums for Third-Country Removals**

On March 30, 2025, Respondent Noem issued a memorandum that provided guidance regarding what is colloquially known as third-country removals. *See* Dkt. 2-7. In this memo, Noem states the following:

> Prior to the alien's removal to a country that had not previously been designated as the country of removal, DHS must determine whether that country has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured. If the United States has received such assurances, and if the Department of State believes those assurances to be credible, the alien may be removed without the need for further procedures. If the United States has not received those assurances, or if the Department of State does not believe them to be credible, DHS must follow the procedures below.
>
> DHS will first inform the alien of removal to that country. Immigration officers will not affirmatively ask whether the alien is afraid of being removed to that country. DHS is taking this approach in line with its determination in mid-2024 that such questioning may be suggestive and that asking them leads to false claims rendering the immigration system as a whole less efficient. *Securing the Border*, 89 Fed. Reg. 48710, 48743 (June 7, 2024) (noting that aliens are "more likely to respond in the affirmative, even if they do not in fact have a fear of return or intention of seeking asylum" when asked affirmative fear questions); *Securing the Border*, 89 Fed. Reg. 81156, 81235 (Oct. 7, 2024). The allegation that a foreign country's

> government will torture an alien or allow an alien to be persecuted, particularly a government with which the United States has a diplomatic relationship, is a serious one. It is not unreasonable for an alien in that circumstance to be expected to affirmatively express a fear of persecution or torture.

Dkt. 2-7 at 2–3.

On July 9, 2025, Respondent Lyons sent another memorandum to "All ICE Employees." *See* Dkt. 2-8 at 2. He stated the following:

> Effective immediately, when seeking to remove an alien with a final order of removal . . . to an alternative country as identified in [insert statutory code], ICE must adhere to Secretary of Homeland Security Kristi Noem's March 30, 2025 memorandum. . . .
>
> If the United States has received diplomatic assurances from the country of removal that aliens removed from the United States will not be persecuted or tortured, and if the Department of State believes those assurance to be credible, the alien may be removed without the need for further procedures.

*Id.*

### C.    The Petition and Emergency Motion

On December 29, 2025, Petitioner filed this Petition. *See* Dkt. 2. Named as respondents are Mark Bowen, Warden of the Adelanto Immigration and Customs Enforcement Processing Center; Ernesto Santacruz, Jr., Director of the Los Angeles Field Office for Immigration and Customs Enforcement; Todd Lyons, Acting Director of ICE; Kristi Noem, Secretary of the United States Department of Homeland Security; and Pamela Bondi, Attorney General of the United States Department of Justice (collectively, "Respondents"). *Id.* at 13–14.

Petitioner asserts three claims against Respondents. First, he argues that his continued detention violates the Immigration and Nationality Act ("INA") and the Fifth Amendment's Due Process Clause because there is no significant likelihood of his removal in the reasonably foreseeable future. Dkt. 2 at 19–22, 25–26. Second, he argues

Respondents are violating the Due Process Clause of the United States Constitution because his continued detention has no legitimate purpose and is punitive. *Id.* at 21–22, 26. Third, he argues that ICE's new removal policies, as detailed in the March 3 and July 9 memorandum, violate his procedural due process rights as he may be removed to a third country without notice and an opportunity to present any fear-based claims. *Id.* at 22–25, 27. Relevant here, Petitioner asks the Court to (1) declare that his continued detention violates the INA and the Due Process Clause; (2) order Respondents to immediately release him and provide notice to his counsel of the exact time and location of release no less than two hours before his release; (3) enjoin Respondents from transferring Petitioner out of this judicial district; (4) enjoin Respondents from removing him to a third country and to provide Petitioner and his counsel notice and the name of the proposed country of removal in writing, along with assurances that the proposed country has agreed to accept him, before initiating any removal; (5) enjoin Respondents from re-detaining Petitioner "unless such re-detention is authorized by law, including by 8 C.F.R. § 241.12, and only after a hearing before this Court concluding that there has been a material change in circumstances"; and (6) "enjoin Respondents and individuals acting in concert with them from re-detaining Mr. Karimaghaee unless a pre-deprivation hearing is granted and such re-detention is found to be authorized by law, including by 8 C.F.R. § 241.13." Dkt. 2 at 27–28. On that same day, Petitioner filed an Emergency Motion requesting that the Court immediately grant the Petition. *See* Dkt. 3.

On December 30, 2025, this Court ordered, in relevant part, that (1) that Petitioner not be moved outside of the jurisdictional boundaries of the United States District Court for the Central District of California during the pendency of this action; (2) Respondents must file an opposition no later than January 6, 2026; and that Petitioner's Emergency Motion will be deemed submitted on either the day the opposition is filed, or due and not field. Dkt. 6. As of the date of this order, Respondents have not filed an opposition or response. Indeed, on February 3, 2026, in Petitioner's Notice of Withdrawal of Pro Hac

Vice Application, Petitioner indicates he spoke to Respondents' counsel, who confirmed that they were not opposing the Petition or Emergency Motion. *See* Dkt. 15 at 3.

This matter is now ripe for decision.

## III. LEGAL STANDARD

Federal district court possess the authority to grant petitions for writ of habeas corpus by a person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a), (c)(3). "The petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); *see also Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 911 (W.D. Wash. 2025) (noting that immigration detainee bears burden of proving by a preponderance of the evidence that he is entitled to habeas relief).

## IV. DISCUSSION

Petitioner asserts three claims against Respondents. First, he asserts that Respondents' ongoing detention of him violates the INA—namely 8 U.S.C. § 1231(a)(6)—because there is no significant likelihood that that his removal to Iran or a third country is reasonably foreseeable. Dkt. 2 at 19–22, 25–26. Second, Petitioner claims that his ongoing detention violates the Fifth Amendment's Due Process Clause because they have no legitimate, non-punitive purpose for keeping him in custody. *Id.* at 21–22, 26. Third, he claims that Respondents' new removal policies from removing noncitizens to third countries will violate his procedural due process rights. *Id.* at 22–25, 27.

### A. Claim 1: Petitioner's Ongoing Detention Violates the Immigration and Nationality Act

The Fifth Amendment's Due Process Clause prohibits the government from depriving a person of life, liberty, and property without due process of law. *See* U.S. Const. amend. V. At its core, due process requires the government to give a person reasonable notice and an opportunity to be heard. *See A. A. R. P. v. Trump*, 605 U.S. 91, 94–95 (2025) (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314

(1950)). These protections extend to all persons physically present in the United States. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). This includes noncitizens and those whose presence is "lawful, unlawful, temporary, or permanent." *Id.* The Supreme Court has repeatedly held for over a century that noncitizens present in the United States must be afforded certain procedural due process protections before they are detained or removed. *See, e.g., A. A. R. P.*, 605 U.S. at 94 ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings.") (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)); *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (holding that the Due Process Clause protects noncitizens subject to a final order of deportation); *Reno*, 507 U.S. at 306 (determining that due process is afforded to noncitizens); *Wong Wing v. United States*, 163 U.S. 228, 238 (1986) (concluding that the Due Process Clause protects noncitizens subject to removal order); *Yamataya v. Fisher*, 189 U.S. 86, 100 (1903) (stating that administrative officers may not disregard due process of law when executing the deportation of noncitizens).

The INA details the procedures for removing a noncitizen from the United States. *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021). When a noncitizen has been ordered removed, ICE must remove him from the United States within 90 days. 8 U.S.C. § 1231(a)(1)(A). Detention is mandatory during the removal period. 8 U.S.C. § 1231(a)(2)(A); *see also* 8 C.F.R. § 241.3(a) ("Once the removal period defined in section 241(a)(1) of the Act begins, an alien in the United States will be taken into custody pursuant to the warrant of removal."). If the noncitizen is not removed within 90 days, he must be released subject to supervision governed by 8 C.F.R. §§ 241.4 or 241.13. *See* 8 U.S.C. § 1231(a)(3).

It is not always possible, however, to effectuate removal within the first 90 days. *Zadvydas*, 533 U.S. 678, 701 (2001). Recognizing this practical reality, certain classes of noncitizens may be detained beyond the initial 90 days for a period reasonably necessary to secure the noncitizen's removal. *See* 8 U.S.C. § 1231(a)(6). In *Zadvydas v. Davis*, the Supreme Court explained that 8 U.S.C. § 1231(a)(6) ("Section 1231") does not permit

indefinite detention. 533 U.S. at 699. But the Supreme Court did hold that under Section 1231(a)(6) a noncitizen may be detained for a presumptively reasonable six-month period to effectuate removal. *Id.* at 701. "This 6-month presumption, of course, does not mean that every alien not removed must be released after six months." *Id.* The government may continue to detain a noncitizen, the Supreme Court stated, "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Because noncitizen detainees cannot be indefinitely detained, after the six-month has elapsed, the noncitizen may be released if he "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*; *see also* 8 C.F.R. § 241.13(d)(3). Assuming this showing can be made, the burden then shifts to the government to introduce evidence to refute that assertion. *Id.*; *see also* 8 C.F.R. § 241.13(e)–(g).

There is no dispute Petitioner has been detained for more than the presumptively reasonable six-month detention period. The immigration judge ordered Petitioner removed on May 6, 2025. The removal period began on that date because that order became administratively final since both parties waived appeal. Petitioner has remained in immigration custody since May 6. When he filed his Petition on December 29, 2025, Petitioner had been detained for more than seven months—beyond the presumptively reasonable six-month detention period. He is therefore entitled to the additional procedural safeguards guaranteed under *Zadvydas*—that is, he may now assert that he should be released if he "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

Petitioner argues there is no significant likelihood of his removal to Iran or an alternative country in the reasonably foreseeable future. The Court agrees. Although Petitioner has been ordered removed to Iran, his removal has been withheld based on his fears of persecution and torture because he is Christian. Until that order is lifted or terminated, there is no likelihood—much less, a significant one—that Petitioner will be removed to Iran in the reasonably foreseeable future. *See Nadarajah v. Gonzalez*, 443

F.3d 1069, 1081–82 (9th Cir. 2006) (holding that removal to designated country was not reasonably foreseeable where petitioner had been granted asylum and withholding of removal under CAT); *L.R. v. Noem*, No. 2:25-cv-02019-RFB-BNWx, 2026 WL 161605, at *10 (D. Nev. Jan. 21, 2026) (concluding petitioner's removal to designated country is not reasonably foreseeable because he had been granted withholding of removal).

Moreover, there is no evidence to show there is a significant likelihood that Petitioner can be removed to an alternative country. Petitioner is not a citizen or national of another country, and he has not lived in any country other than Iran and the United States. Apart from the casual remarks from an ICE officer that they *may* remove Petitioner to an alternative country, ICE has not taken any affirmative steps to initiate that process. They have not identified an alternative country for removal. There is no evidence that Respondents have begun the process of obtaining travel documents to said country. And there is no evidence that they have notified Petitioner of his right to apply for asylum and withholding of deportation as is required under Ninth Circuit law. *See Andriasian v. Immigr. & Naturalization Serv.*, 180 F.3d 1033, 1041 (9th Cir. 1999) (holding that that the Due Process Clause and the INA's implementing regulation require the government "to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported"). Based on this record, Petitioner has carried his burden of demonstrating there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *See Bozorgpasand v. Facility Adm'r*, No. 25-cv-1177-JHC, 2026 WL 171775, at *2–3 (W.D. Wash. Jan. 22, 2026) (concluding there was no significant likelihood of petitioner's removal to a third country where "no other third country ha[d] been identified for his removal, and the Government ha[d] not started the processes of requesting another third country to accept him").

The burden shifts to Respondents to introduce evidence to refute that assertion. They have not carried that burden. Respondents did not file any opposition to the Petition, and in fact, do not refute the evidence upon which Petitioner relies. Accordingly,

Petitioner's continued detention is unlawful and unconstitutional because there is no significant likelihood of his removal to Iran or a third country in the reasonably foreseeable future. Petitioner has thus carried his burden of showing he is entitled to habeas relief on this claim.

Because Petitioner is being granted relief on Claim 1, the Court denies Claim 2 as moot since resolution of that claim would offer Petitioner no greater relief. *See Goldyn v. Haynes*, 444 F.3d 1062, 1071 n.14 (9th Cir. 2006) (declining to consider other claims where petition was granted on a single claim that afforded petitioner full relief); *Rojas v. Johnson*, No. 5:25-cv-03164-SSS-BFM, 2026 WL 209527, at *1 (C.D. Cal. Jan. 26, 2026) (denying as moot immigration detainee's second claim because first claim offered full scope of relief); *Delapinia v. Johnson*, No. 2:17-cv-02376-MMD-DJA, 2022 WL 867056, at *11 n.7 (D. Nev. Mar. 22, 2022) (denying as moot claims that would provide petitioner no greater relief on the granted claims).

### B. Claim 3: Third-Country Removal

When a noncitizen is ordered removed from the United States, an immigration judge must identify a removal country or alternative countries to which the noncitizen can be removed. *See Hadera v. Gonzales*, 494 F.3d 1154, 1156 (9th Cir. 2007); *see also* 8 U.S.C. § 1231(b)(2)(A)–(B); 8 C.F.R. § 1240.12(d). If the Attorney General is unable to remove the noncitizen to the designated country, it may remove a noncitizen to what is colloquially known as a third country. *See* 8 U.S.C. § 1231(b)(2)(A)–(B); 8 C.F.R. § 1240.12(d). Before the government can do so, however, it must notify the noncitizen of the right to apply for asylum and withholding of deportation and an opportunity to be heard. *See Andriasian v. Immigr. & Naturalization Serv.*, 180 F.3d 1033, 1041 (9th Cir. 1999); *see also* 8 U.S.C. § 1231(b)(3)(A).

Petitioner argues that removal to a third country without prior notice and an opportunity to present a fear-based claim would violate his procedural due process rights. In so arguing, Petitioner contends that the government's new removal policies raise

concerns that they "may now attempt to hastily remove [him] to a third country without adequate notice and an opportunity to apply for protection." Dkt. 2 at 22.

Petitioner has carried his burden that ICE may try to remove him to a third country without affording him notice or an opportunity to be heard. In early September 2025, an ICE officer told Petitioner that they may send him to a third country. Despite this remark, ICE has not identified the country to which they seek Petitioner's removal, they have not notified him that he has the right to apply for asylum and for withholding of deportation, nor have they provided Petitioner with an opportunity to be heard on such fear-based claims. This remark, coupled with DHS's new policies, raises grave concerns that Respondents will attempt to remove Petitioner to a third country based solely on another country's assurances that they will not persecute or torture him. But Ninth Circuit authority and the INA require that the government provide, at a minimum, notice of his right to apply for asylum and withholding of deportation and an opportunity to be heard on any fear-based claim. *See Andriasian*, 180 F.3d at 1041. As one district court aptly stated, "[t]his policy contravenes Ninth Circuit law" and "[i]t would be impossible to comply both with Ninth Circuit precedent and the policy." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 729 (citing *Andriasian*, 180 F.3d at 1041). Accordingly, the Court concludes that Petitioner is entitled to habeas relief on this claim.

### C. Scope of Relief

The final issue to resolve is what relief Petitioner is entitled to receive. Petitioner asks that the Court (1) declare that his continued detention violates the INA and the Due Process Clause; (2) order Respondents to immediately release him and provide notice to his counsel of the exact time and location of release no less than two hours before his release; (3) enjoin Respondents from transferring Petitioner out of this judicial district; (4) enjoin Respondents from removing him to a third country and to provide Petitioner and his counsel notice and the name of the proposed country of removal in writing, along with assurances that the proposed country has agreed to accept him, before initiating any removal; (5) enjoin Respondents from re-detaining Petitioner "unless such re-detention is

authorized by law, including by 8 C.F.R. § 241.12, and only after a hearing before this Court concluding that there has been a material change in circumstances"; and (6) enjoin Respondents and individuals acting in concert with them from re-detaining Mr. Karimaghaee unless a pre-deprivation hearing is granted and such re-detention is found to be authorized by law, including by 8 C.F.R. § 241.13." Dkt. 2 at 27–28.

The Court declares that Petitioner's continued detention violates the INA and Due Process Clause; orders Respondents to immediately release Petitioner and provide notice to his counsel of the time and location of release no less than two hours before his release; and enjoins Respondents from removing him to a third country without first providing Petitioner and his counsel written notice identifying the country, along with assurances that the proposed country has agreed to accept him. Petitioner's request to enjoin Respondents from transferring Petitioner out of this judicial district is moot considering the court's order to immediately release Petitioner from custody. With respect to Petitioner's last two requests—to enjoin Respondents from re-detaining him "only after a hearing before this Court concluding that there has been a material change in circumstances" and "unless a pre-deprivation hearing is granted and such re-detention is found to be authorized by law," *see* Dkt. 2 at 28—the Court finds Petitioner has not carried his burden to show that he is entitled to such procedural protections under the Due Process Clause or the INA and its implementing regulations.

## V.   CONCLUSION

For the above reasons, the Petition is **GRANTED, IN PART,** as follows:

- Respondents continued detention of Petitioner violates the INA and the Fifth Amendment's Due Process Clause;

- Respondents, their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Respondents are **ORDERED** to immediately release Petitioner from immigration custody by February 6, 2026, at 5:00 p.m. Respondents are also **ORDERED** to provide notice to counsel of the time and location of release at least two hours prior to Petitioner's release. Respondents are further **ORDERED** to file a declaration on or before February 9, 2025, from a

person with personal knowledge, attesting that Petitioner has been released from immigration custody by the date and time identified above;

- Respondents, their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Respondents are **ENJOINED** from removing Petitioner to a third country without notifying Petitioner of the third country to which Respondents are seeking removal, without notifying him that he can raise fear-based claims, and without an opportunity to raise any fear-based claims as required under 8 U.S.C. § 1231(b)(3) and Ninth Circuit law;

- A judgment will be separately issued.

**IT IS SO ORDERED.**

Dated: February 5, 2026

HON. SERENA R. MURILLO
UNITED STATES DISTRICT JUDGE